404 P.2d 33

Archie **LEININGER**, Plaintiff and Appellant,

v.

**STEARNS–ROGER MANUFACTURING COMPANY, a corporation, XYZ Company, a corporation, X, Y and Z, a co-partnership, Does I through V, Defendants and Respondents.**

No. 10193.

Supreme Court of Utah.

July 12, 1965.

---

Draper, Sandack & Saperstein, Salt Lake City, for plaintiff and appellant.

Elton & Moore, Salt Lake City, for defendants and respondents.

RUGGERI, District Judge:

The plaintiff, Archie Leininger, while an employee of Texas Zinc Minerals Corporation, was injured in the course of his employment by the explosion of an exhaust fan that he was dismantling, and he instituted suit for damages against the defendant, Stearns-Roger Manufacturing Company, an independent contractor which had supplied the fan almost four years prior thereto. The trial court granted the defendant's motion for summary judgment and dismissed the action. Plaintiff appeals. Judgment affirmed. Costs to respondent.

On April 18, 1956, Texas-Zinc contracted for the construction by Stearns-Roger, as general contractor, of a uranium ore processing plant near Mexican Hat, Utah. The contract contemplated that Texas-Zinc would, in some instances, specify the installation of certain items of equipment of its own selection; and in this connection the contract provided as follows:

Article 4. CONTRACTOR'S DUTIES AND RESPONSIBILITIES: This Contractor shall be responsible for the execution and completion of the work in accordance with the provisions of this contract. The Contractor undertakes to turn over to the Company a completed uranium ore processing plant and copper concentrating plant, including appurtenances thereto and the said additional surface facilities, ready for operation in a manner satisfactory to the Company; provided, however, *that the Contractor shall have no responsibility for the adequacy of certain major items of equipment selected solely by the Company where the same are properly installed and functioning in accordance wtih the manufacturers' representations.*

Texas-Zinc, through its chief chemist, specified the installation by Stearns-Roger

of two Durco type B-124 corrosion resistant exhaust fans manufactured by the Duriron Company, Inc. of Dayton, Ohio, to be installed in its chemical laboratory. These fans were received from the manufacturer in December 1956, fully assembled and ready for operation, and were placed by Stearns-Roger in their allotted positions at the chemical laboratory assay plant of Texas-Zinc, pursuant to plans and specifications.

In 1957 Stearns-Roger completed its contract for the construction of the uranium ore processing plant and same was accepted by Texas-Zinc. In September 1960 the plaintiff, an employee of Texas-Zinc, in the course of his employment, while removing the sealing compound from one of the Durco fans, was injured when the fan exploded.

The cause of the unusual explosion, by uncontroverted evidence, was the use by the manufacturer of the fan of an organic sealer containing a litharge and glycerin compound which sealed the rear face plate housing the blower shaft on the fan. The explosion resulted from the formation, over a period of almost four years' use, of explosive compounds developed by reactions between perchloric acid fumes and the litharge and glycerin sealing agent.

It is plaintiff's contention that the trial court erred in holding that the defendant contractor was not liable for the work after its completion and acceptance by Texas-Zinc, the contractee; and that even though Texas-Zinc selected and requested the specific Durco type fans, the defendant contractor had the duty to test and check the sealing compound used by the manufacturer in the construction of the fans. Plaintiff further contends that even though Texas-Zinc prior to plaintiff's injury had knowledge of prior explosions of such Durco fans, its knowledge was not such intervening cause as to relieve the defendant contractor from liability; and that the trial court erred by its refusal to submit the case to a jury on the theories of defendant contractor's negligence and alleged breach of warranty.

Both the plaintiff and the defendant cite the cases of Berg v. Otis Elevator Co., 64 Utah 518, 231 P. 832; and Sutton v. Otis Elevator Co., 68 Utah 85, 249 P. 437; which cases involve the repair or maintenance of a passenger elevator by an independent contractor as distinguished from the instant case wherein the defendant contractor was entirely subject to Texas-Zinc's control in its choice of providing ventilating fans (namely Durco fans); did not exercise any independent judgment in the selection of such fans; and received the fans, as manufactured by the Duriron Company, delivered in a fully assembled condition, requiring no more than routine placement in designated locations and electrical connection to place them in full operation. There was nothing to indicate that the fans were inherently dangerous; they were delivered

without visible defects; they functioned to the complete satisfaction of Texas-Zinc; there was nothing to put the defendant contractor on inquiry or notice so as to impose upon it the duty of completely dismantling the fans and analyzing all of their components to ascertain if, perhaps, they harbored some remotely possible unsuitable component that rendered them unsafe for their intended use. The instant case is not one of the contractee accepting an instrumentality constructed or repaired by the contractor according to a plan or design furnished by the contractee to the contractor; this is a case wherein the contractee, Texas-Zinc, selected and specifically required the securing and furnishing by the defendant contractor of a name-brand, fully operational instrumentality, the acceptance of which by the contractee, Texas-Zinc, was foreordained by its contract with Stearns-Roger, the defendant contractor. The defendant contractor, in the instant case, was a mere vehicle, a conduit through which the Durco fans passed; it did not design, sell or recommend the installation of such fans, and had no discretion in their selection; there was no claim of any act of negligence on defendant's part in the placement of the fans in the laboratory of Texas-Zinc pursuant to specifications; and neither did the defendant contractor have knowledge, actual or constructive, of the propensity of such type fans to explode following extended daily use and when in need of servicing.

■ This court is familiar with the general rule as to the non-liability of an independent contractor after the acceptance of the work by the owner, as well as with the exceptions to this rule and the so-called "modern view." 13 A.L.R.2d 195; 58 A.L.R.2d 869. However, each case must be decided on the basis of its own facts and seldom are two cases identical.

■■ The so-called "modern view" has the effect of applying to construction contractors the landmark standard promulgated in MacPherson v. Buick Motor Company, 217 N.Y. 382, 111 N.E. 1050, L.R.A.1916F, 696, but does not have the effect of making the contractor absolutely liable to third persons if the contractor was free of negligence. An important limitation on the rule placing building contractors on the same footing as sellers of goods is that the contractor is not liable if he has merely carried out the plans, specifications and directions given him, since in that case the responsibility is assumed by the employer, at least when the plans are not so obviously dangerous that no reasonable man would follow them. The rule, as stated in Ryan v. Feeney & Sheehan Bldg. Co., 239 N.Y. 43, 145 N.E. 321, 41 A.L.R. 1 (1924), which is the same court which earlier had decided MacPherson v. Buick, supra, is as follows:

* * * A builder or contractor is justified in relying upon the plans and specifications which he has contracted to follow, unless they are so apparent-

ly defective that an ordinary builder of ordinary prudence would be put upon notice that the work was dangerous and likely to cause injury.

And this rule was followed and cited approvingly by Judge Learned Hand in Person v. Cauldwell-Wingate Co., 2 Cir., 187 F.2d 832, cert. den. 341 U.S. 936, 71 S.Ct. 855, 95 L.Ed. 1364 (1951). See also: Russell v. Arthur Whitcomb, Inc., 100 N.H. 171, 121 A.2d 781; Tipton v. Clower, 67 N.M. 388, 356 P.2d 46; Trustees of the First Baptist Church of Corinth v. Mc-Elroy, 223 Miss. 327, 78 So.2d 138; Davis v. Henderlong Lumber Company, D.C., 221 F.Supp. 129 (1963).

█ With respect to plaintiff's claim of a breach of warranty by the defendant contractor, it appears that Texas-Zinc, through its chief chemist, specified Durco exhaust fans manufactured by the Duriron Company, and that the defendant contractor installed such fans, which were free from visible defects *and in accordance with the specifications.* There is no sound basis for the imposition of liability upon the defendant Stearns-Roger on the theory of breach of an express warranty as to the suitability of the exhaust fans for the designated use, and there is no basis for an implied warranty of fitness since the contractor provided the identical fans which he was required to furnish. The damages suffered by the plaintiff were directly caused by the unsuitability of the exhaust fans

for use in a chemical laboratory of the kind here involved rather than by the nature of the defendant contractor's performance of his contract. Corporation of Presiding Bishop v. Cavanaugh, 217 Cal. App.2d 492, 32 Cal.Rptr. 144.

█ Plaintiff claims that the trial court erred in its refusal of certain of plaintiff's exhibits offered for the purpose of creating a supposed inference within the knowledge of the defendant Stearns-Roger that the Durco fans were inherently and imminently dangerous. The plaintiff refers particularly to a letter, addressed to Users of Durco fans by The Duriron Company, Inc., the manufacturer of such fans. From the date of this letter, namely March 19, 1962, it appears that The Duriron Company itself was not aware of the inherent danger of its product, when employed to exhaust percholoric acid fumes, until over five years after the fans had been installed in the Texas-Zinc laboratory, when it gave general notice that it would thereafter not sell any fans for use to exhaust perchloric acid fumes, and that those using their fans for such purpose did so at their own risk. The dates on other proffered exhibits, all years following the plaintiff's injury, would further substantiate a general lack of experience and knowledge relative to the propensity of exhaust fans to explode after extended use to exhaust perchloric acid fumes. The reception of such proffered exhibits would not have contributed to

plaintiff's case, and their non-admission was not error.

It appears from the deposition of Robert Lewis Maurice, Jr., chief chemist for Texas-Zinc, that he specifically informed the defendant Stearns-Roger that, on behalf of Texas-Zinc, he wanted the same installation of Durco fans as in the Lucius Pitkin A. E. C. laboratory in Grand Junction, Colorado, where he had once been employed. On June 29, 1959, a chemist in the Lucius Pitkin A. E. C. laboratory was injured by an explosion of an exhaust fan, and Mr. Maurice, chief chemist of Texas-Zinc heard of the incident, just when does not appear, but it was definitely prior to plaintiff's injury. Upon this discovery by Texas-Zinc of the concealed danger inherent in its exhaust fans, its responsibility superseded that of the defendant contractor, assuming, which we do not in the instant case, that the contractor was otherwise responsible.

This view is supported by Dean Prosser (Prosser on Torts 2nd Edition, Section 85, page 519).

One important limitation recognized in several cases is that the contractor is not liable if he has merely carried out carefully the plans, specifications, and directions given him since in that case the responsibility is assumed by the employer, at least where the plans are not so obviously dangerous that no

reasonable man would follow them. In the only cases that have been found on the point, it has been held that the employer's failure to discover the defect will not relieve the contractor of liability; *but that if he discovers the danger, or it is obvious to him, his responsibility supersedes that of the contractor.* (Emphasis supplied)

The plaintiff further takes the position that factual issues are posed which are not proper for summary judgment. Plaintiff argues that the defendant *"contractor is liable when the product of his work is inherently or imminently dangerous,"* and that the defendant contractor knew, or should have known, of the danger inherent in the Durco fans, and was negligent in supplying them even though specifically directed so to do by the chief chemist of Texas-Zinc. The Durco fans were not the product of the defendant's work—they were fully assembled, name-brand fans, and were merely placed by the defendant in their designated locations pursuant to plans and specifications; and at the time of their placement, no one was aware of any hazard incident to their intended use. Summary judgment is not a substitute for trial but is rather a judicial search for determining whether genuine issues exist as to material facts. Rule 56, Utah Rules of Civil Procedure, dictates the granting of summary judgment where there is no genuine issue of a material fact. The plaintiff in the

**44**

instant case has attempted to create factual issues, but the whole purpose of summary judgment would be defeated if a case could be forced to trial by a mere assertion that an issue exists. National American Life Insurance Company, etc. v. Bayou Country Club, Inc. et al., 16 Utah 2d ——, 403 P.2d 26 (June 1965); see also Davis v. Henderlong Lumber Company, D.C., 221 F.Supp. 129 (1963).

HENRIOD, C. J., and CROCKETT, WADE and CALLISTER, JJ., concur.

McDONOUGH, J., having disqualified himself, does not participate herein.