**DELTA REFINING COMPANY,**
**Plaintiff-Appellant,**

v.

**PROCON, INCORPORATED, et al.,**
**Defendants-Appellees.**

Court of Appeals of Tennessee,
Western Section.

May 26, 1976.

Certiorari Denied by Supreme Court
Nov. 1, 1976.

Rehearing Denied by Supreme
Court April 4, 1977.

William H. Luck, Memphis, for plaintiff-appellant.

Buchignani & Greener, Memphis, for defendants-appellees.

CARNEY, Presiding Judge.

This lawsuit arose out of a disastrous fire which occurred at the Delta Refinery in Memphis, Tennessee, in the early morning of December 7, 1969. Damages amounted to approximately $500,000. The cause of the fire was a defective pump built and assembled by the Sunstrand Company at its plant in Denver, Colorado. The plans and specifications for the pump were drawn by the Universal Oil Products, hereinafter called UOP. The pump was purchased and installed by the Defendant-Appellee, Procon, Inc., under a general construction contract with Plaintiff-Appellant Delta Refining Company. Procon, Inc. is the contracting subsidiary of UOP and is a frequent contractor for construction of refining facilities. The total contract price with Procon, Inc. was $1,030,000.

Delta Refining Company brought the present suit against the Defendant, Procon, Inc., general contractor, and Sunstrand, the manufacturer of the pump. Defendant Procon then filed a cross claim against Sunstrand. Sunstrand then cross claimed against Procon and Universal Oil Products. It will be remembered that Universal Oil Products drafted the plans and specifications for the pump. In turn, Universal Oil Products impleaded Sunstrand. All of the Defendants denied liability to the Plaintiff, Delta Refining Company.

The case was tried to a jury. At the conclusion of Plaintiff's proof, the Trial Judge granted a directed verdict in favor of the Defendant-Appellee, Procon, Inc. After the directed verdict in favor of Procon, Inc., the Plaintiff took nonsuits as to the other Defendants, Sunstrand and UOP. Plaintiff Delta Refining Company contended in the Court below and contends in this Court on appeal that it was entitled to go to the jury against Procon on two theories: (1) The jury could find Procon, Inc. negligent in failing to determine whether or not the bolt contained in the pump manufactured by Sunstrand met the specifications. (2) The jury could find the Defendant Procon liable under strict liability in tort doctrine as seller of the pump under 402A *Restatement of Torts*, Second Edition.

Plaintiff Delta Refining Company, together with 3,000 other independent refineries over the world, operates as a licensee of Universal Oil Products Company. Licensees are permitted to use UOP process in refining premium gasoline. The Defendant Procon, Inc. contracted to supply engineering, new apparatus and materials and construction services for the revamp of Delta's existing $C_3$ alkylation unit to a $C_3 + C_4$ alkylation unit so as to produce premium gasoline according to plans and specifications furnished by UOP. The plans specified that a depropanizer charge pump be purchased from Sunstrand and installed by Procon. The specifications furnished by UOP indicated that the pump would be handling hydrofluoric acid.

Three weeks after the pump was placed in service, the six stud bolts uniting the pump to the pump case all failed simultaneously releasing a highly volatile product. The product became ignited and the half million dollar fire resulted. The stud bolts failed because they were hardened to a Rockwell C–42–46 and thus were more susceptible to corrosion from the hydrofluoric acid than they would have been if the bolts had been hardened only to a Rockwell hardness of C–25.

UOP contends that the specifications for the pumps clearly provided for a Rockwell hardness of only C–25 for the stud bolts whereas Sunstrand insists that the specifications did not forbid stud bolts of a hardness of Rockwell C–42–46. Sunstrand also insists that even if the bolts did not meet the specifications, it furnished a detailed statement to Procon and/or UOP showing exactly what bolts and/or other materials it proposed to furnish in compliance with the specifications; that neither Procon nor UOP made any objections; that therefore, both UOP and Procon are estopped to con-

tend that Sunstrand did not furnish stud bolts in accordance with the specifications.

It is admitted that Procon did not check the studs when it received the pump to see whether or not they met specifications. The pump was already assembled and it would have been necessary to dismantle the pump in order to inspect the studs. It is conceded that a visual inspection would not have revealed hardness of the bolts and that the hardness of the bolts could have been determined only by a special laboratory test which Procon was not equipped to make.

Some of Plaintiff's expert testimony indicated that the stud bolts furnished by Sunstrand for the pump did not meet the specifications drawn up by UOP. Other expert testimony indicated that the specifications might be construed to authorize the stud bolt as furnished by Sunstrand in the manufacture of the pump.

We find no merit in the Plaintiff's contention that Procon, Inc. is liable under the strict liability in tort doctrine as a seller of the product. We agree with the rationale of *Southwest Forest Industries, Inc. v. Westinghouse Electric Corp.*, 422 F.2d 1013 (C.A. 9, Ariz., 1970), dealing with a defective turbine generator used in a paper pulp mill denying strict liability in tort. We quote from the opinion as follows:

> "The principles underlying the doctrine of strict liability in tort with respect to products were not applicable. All damages sought by Southwest in this case are consequential damages. The turbine generator is a highly specialized, custom-built piece of machinery, built to the particular specifications and tested in the factory before delivery, under supervision of engineers representing both parties. The circumstances of this case do not bring the plaintiff within that class of consumers, type of transaction, or damages suffered that created the need based on strict liability in tort. Neither the philosophy nor the theory of the doctrine of strict liability in tort, nor the actual holdings of the cases involved support an extension of the doctrine of strict liability in tort to the present facts."

See also *Parker v. Warren* (Tenn.App.W. S.1973), 503 S.W.2d 938, where this Court held that carpenters who had constructed two top rows of bleacher seats at a wrestling arena were not liable under the theory of strict liability in tort when the seats broke because they were not sellers of the lumber used and were not engaged in the business of selling lumber as such.

In the instant case, Procon did not sell the defective pump in the sense used in *Restatement of Torts*, 402A. It was not in the business of selling such pumps. Procon merely contracted with Delta to purchase and install a pump which Sunstrand would build according to specifications furnished by Plaintiff. The portion of the assignment of error relating to strict liability is respectfully overruled.

We also hold that His Honor the Trial Judge correctly held that Procon, Inc. was under no legal duty to dismantle the pump and send the stud bolts off to a laboratory for testing as to hardness. The installation required nothing more than connection of the suction and discharge flanges, wiring of the pump motor and connection of a flush line. It was given a preliminary test in November 1969 by Delta, found to be free of leaks whereupon it was placed in operation and seemed to be operating completely satisfactorily until December 7, 1969, when the fire occurred. Absent any unusual circumstances which put Procon on notice that the pump might be defective, there was no actionable negligence on the part of Procon.

In the case of *Leininger v. Stearns-Roger Manufacturing Co.*, 17 Utah 2d 37, 404 P.2d 33 (1965), an exhaust fan in a uranium ore processing plant exploded. It had been designed by the chief chemist of the owner. It was purchased and installed by the Defendant contractor. When purchased, the fan was fully assembled and the Defendant contractor installed the fan according to plans and specifications. In a suit by an injured Plaintiff, the Trial Judge gave summary judgment for Defendant contractor.

Our opinion that Procon was not expected by Delta to test the pump and its components is fortified by the express language of Procon's contract with Delta:

" . . . CONTRACTOR'S liability by reason of defective materials or workmanship shall be limited to the obligation to repair or replace such defective materials or workmanship to the extent provided hereunder.

For the benefit of CUSTOMER, CONTRACTOR shall obtain from equipment and material vendors guarantees against defects in materials and workmanship to the extent that such guarantees are reasonably obtainable and liability therefor shall be limited to the guarantees so obtained.

8. *LIMIT OF CONTRACTOR'S OPERATING OBLIGATIONS*

CONTRACTOR'S construction obligations with respect to the operation of the plant and of the individual processing units and other items of equipment embodied therein shall be limited to the workmanship guarantees set forth in Article 7 hereof and CONTRACTOR shall in no event be liable for consequential damages."

From a consideration of the relationship it is clear that Delta relied upon UOP to draft the proper specifications for the pump to be used in the remodeling project and did not expect to hold Procon liable for the defective pump unless Procon was put on notice that the pump was defective at the time of installation.

Plaintiff Delta cites the case of *Sadler v. Draper*, (M.S.1959), 46 Tenn.App. 1, 326 S.W.2d 148, in support of its contention that the Trial Judge should not have granted a directed verdict for one Defendant, Procon, at least until the Defendant Sunstrand should have had an opportunity to present its evidence both in defense to Delta's action and its cross claim against Procon. Under the authority of *Sadler*, we hold that His Honor the Trial Judge had a discretion to grant the directed verdict to Procon. We see no abuse of this discretion.

The assignments of error are overruled. The judgment of the lower Court is affirmed. The costs are taxed to Plaintiff-Appellant Delta Refining Company.

MATHERNE and NEARN, JJ., concur.