Argued and submitted September 10, 1997, decision of Court of Appeals reversed
and case remanded to Court of Appeals December 17, 1998
See 160 Or App 390, 981 P2d 395 (1999)

## COULTER PROPERTY MANAGEMENT, INC.,
*Respondent on Review,*

. *v.*

## Samuel JAMES,
*Petitioner on Review.*

## (CC 9305-02944; CA A85455; SC S43732)

970 P2d 209

Jeffrey C. Jacobs, Portland, argued the cause and filed the briefs for petitioner on review.

Ralph C. Spooner, of Spooner & Much, P.C., Salem, argued the cause for respondent on review. With him on the briefs was Mary Kim Wood.

Annette E. Talbott, Portland, filed briefs on behalf of *amicus curiae* Oregon Trial Lawyers' Association.

Before Carson, Chief Justice, and Gillette, Van Hoomissen, Durham, and Kulongoski, Justices.**

VAN HOOMISSEN, J.

** Fadeley, J., retired January 31, 1998, and did not participate in this decision; Graber, J., resigned March 31, 1998, and did not participate in this decision.

## VAN HOOMISSEN, J.

■ This is a landlord-tenant personal injury action. We address two questions on review: First, do the habitability requirements of the 1991 version of the Oregon Residential Landlord and Tenant Act (RLTA), ORS 90.100 *et seq.* (1991) require that a tenant prove that the landlord knew or should have known of an alleged habitability violation? Both the circuit court and the Court of Appeals concluded that the 1991 RLTA requires proof of actual or constructive knowledge. *Coulter Property Management, Inc. v. James*, 138 Or App 568, 910 P2d 397 (1996). However, we recently reached the opposite conclusion in *Davis v. Campbell*, 327 Or 584, 965 P2d 1017 (1998). Accordingly, we reverse that part of the Court of Appeals' decision without further discussion.

The second question is whether the principles set out in section 358 of the *Restatement (Second) of Torts* (1965), should continue to govern a landlord's common-law liability to a tenant. The circuit court chose not to apply section 358 and, instead, applied a general foreseeability standard. The Court of Appeals reversed, concluding that section 358 is the appropriate source of law. *Coulter Property Management*, 138 Or App at 573-74. As discussed below, we disagree with that conclusion as well. Accordingly, we reverse the decision of the Court of Appeals and remand the case to that court to consider tenant's cross-appeal.

The following facts are undisputed. Samuel James (tenant) leased a unit in the Mitchell Court Apartments in Portland beginning in July 1992. Coulter Property Management, Inc. (landlord) had been managing those apartments since January 1992. In February 1993, tenant was injured when he and two guests fell from the unit's second-story balcony after the balcony's railing came loose. Neither tenant nor landlord knew that the railing, which had been inspected on various earlier occasions, presented a safety hazard. After the incident, tenant failed to pay rent when due, and landlord brought a forcible entry and detainer action.

In response, tenant filed counterclaims against landlord including a common-law negligence claim and a statutory claim for damages under the RLTA. The thrust of tenant's negligence claim was that landlord had failed to inspect

the railing or properly maintain it. In defense, landlord argued that it had no notice of any defect in the railing and that tenant had been engaging in horseplay with his guests on the balcony and was intoxicated when the accident occurred.

Before trial, landlord dismissed its forcible entry and detainer claim. Proceedings before the jury, therefore, involved only tenant's counterclaims. At the close of tenant's case, landlord moved for a directed verdict against the RLTA claim. The circuit court allowed that motion, but permitted tenant to amend his common-law negligence counterclaim to include the alleged RLTA habitability violations as specifications of landlord's negligence. As a result of those and other motions and stipulations concerning tenant's claims, the circuit court submitted to the jury only tenant's negligence claim, augmented by the RLTA-based specifications of negligence.

A disagreement arose as to the proper standard of care that a landlord owes a tenant under the common law. Landlord argued that section 358 of the *Restatement* provides the appropriate standard. Based on that argument, landlord proffered two instructions, which provided, in part:

> "Under Oregon law, Coulter Property Management, as the managers of the apartment complex where Mr. James lived, may by liable to Mr. James under this claim of negligence only if all of the following conditions are proven:
>
> "1.   First, the condition that Mr. James is complaining of, that is the deck and railing, must involve an unreasonable risk of physical harm to the tenant;
>
> "2.   Second, Mr. James, as a tenant, must not know or have reason to know of the condition or the risk involved;
>
> "3.   Third, Coulter Property Management, as managers of the apartment complex, must know of or have reason to know of the condition and realize or should realize the risk involved; and
>
> "4.   Fourth, the apartment manager must have reason to expect that the tenant will not discover the condition or realize the risk.

"Under a common law claim for negligence, a property manager does not have a duty to inspect the tenant's apartment for dangerous conditions. In order for a property manager to be liable for concealing or failing to disclose an unreasonably dangerous condition, it is not enough that the dangerous condition is one which might be discovered by a reasonable inspection of the premises. * * *"[1]

The circuit court rejected landlord's proposed instructions and instead gave a general instruction on negligence as follows:

"In general, it is the duty of everyone in our society to use reasonable care to avoid injury to themselves and to others. Reasonable care is that care which persons of reasonable prudence exercise in the conduct of their own affairs.

"Negligence is the doing of some act which a reasonably prudent person would not do or the failure to do something which a reasonably prudent person would do under similar or—under the same or similar circumstances to avoid injury. The care should be in keeping with that required at the time and circumstances of the incident in question, not in the light of hindsight."

The jury found for tenant, awarding him $32,892.60 in economic damages and $333,000.00 in noneconomic damages. Landlord appealed from the judgment entered on the jury's verdict and from a supplemental judgment awarding tenant attorney fees under the RLTA and costs. Tenant

---

[1] *Restatement (Second) of Torts* § 358 (1965) provides:

"(1) A lessor of land who conceals or fails to disclose to his lessee any condition, whether natural or artificial, which involves unreasonable risk of physical harm to persons on the land, is subject to liability to the lessee and others upon the land with the consent of the lessee or his sublessee for physical harm caused by the condition after the lessee has taken possession, if

"(a) the lessee does not know or have reason to know of the condition or the risk involved, and

"(b) the lessor knows or has reason to know of the condition, and realizes or should realize the risk involved, and has reason to expect that the lessee will not discover the condition or realize the risk.

"(2) If the lessor actively conceals the condition, the liability stated in Subsection (1) continues until the lessee discovers it and has reasonable opportunity to take effective precautions against it. Otherwise the liability continues only until the lessee has had reasonable opportunity to discover the condition and to take such precautions."

cross-appealed from the supplemental judgment, challenging the sufficiency of the trial court's award of attorney fees.

The Court of Appeals reversed and remanded, concluding that the circuit court erred by failing to instruct the jury based on the *Restatement*:

> "In sum, the trial court erred in giving a standard negligence instruction instead of landlord's special instruction * * * which was based on section 358 of the *Restatement*. The pertinent question in this case is whether landlord had 'reason to know' about the allegedly dangerous condition of the balcony railing, specifically, whether landlord's annual inspections were negligently performed and as a result failed to uncover existing defects. However, because of the manner in which the court instructed the jury, that question was neither asked nor answered." *Coulter Property Management*, 138 Or App at 574.

The Court of Appeals also concluded that, although the circuit court properly had struck tenant's RLTA claim, because landlord had no notice of the railing's defect, the trial court erred "when it allowed that same claim to go forward under a different label," *i.e.*, negligence *per se*. *Id.* at 574-75. As noted, the premise underlying that ruling was incorrect. The Court of Appeals also held that the circuit court erred by refusing landlord's request to poll the jury as to each question on the special verdict form, rather than as to only the broader question whether each juror agreed with the verdict. *Id.* at 575.[2] Finally, because the Court of Appeals earlier had determined that tenant "had no legal basis for a claim under the RLTA," the court refused to consider tenant's cross-appeal regarding attorney fees. *Ibid.*

On review, tenant makes three arguments concerning the *Restatement's* continuing applicability. First, he argues that, by framing the "pertinent question" to be whether landlord should have known about the defect, 138 Or App at 574, the Court of Appeals failed to capture the total

---

[2] On review, the parties debate the propriety of that ruling. In particular, they disagree whether the "we can't tell" rule of *Whinston v. Kaiser Foundation Hospital*, 309 Or 350, 788 P2d 428 (1990), should apply to this case and, if so, whether the court should continue to adhere to that rule. Given our disposition of the other issues on review, we need not address those questions.

import of section 358 and landlord's proposed instructions. Tenant is correct. Applying section 358 and using landlord's instructions would have required tenant to prove, among other things, that landlord knew or should have known of the defective railing *and* that tenant himself neither knew nor should have known about the defect. The Court of Appeals' analysis, therefore, was incomplete. Agreeing with tenant on this point, however, does not advance meaningfully our effort to answer the question on review, namely, should the court continue to follow the approach of section 358 in landlord-tenant cases?

■ ■ Tenant next argues that we should disavow the *Restatement* as a statement of the common law in Oregon, because the standard that the *Restatement* espouses is inconsistent with the habitability provisions of the RLTA, which the legislature enacted *after* the court adopted section 358. With respect to the interplay between the RLTA and existing common law, this court stated in *Davis*:

> "Given the lack of contrary legislative intent, a tenant may choose to maintain claims of common-law negligence and statutory liability against a landlord in the same action." 327 Or at 592 (citing *Bellikka v. Green*, 306 Or 630, 638, 762 P2d 997 (1988)).

*See also Jones v. Bierek*, 306 Or 42, 46, 755 P2d 698 (1988) (rejecting argument that "the Legislative Assembly intended [the] RLTA to be the exclusive source of a tenant's remedies against a landlord"). Accordingly, simply because the RLTA imposes certain affirmative duties on landlords does not necessarily mean that those duties automatically supplant the common law.

Finally, tenant argues that we should reject section 358, because the legal standard that that section espouses includes elements of traditional contributory negligence and implied assumption of the risk, concepts that the legislature has abolished.[3] In response, landlord contends that section 358

---

[3] ORS 18.470 provides, in part:

"(1) Contributory negligence shall not bar recovery in an action by any person or the legal representative of the person to recover damages for death or injury to person or property if the fault attributable to the claimant was not

"merely places the burden on the tenant, as the person in the best position to know after the tenancy commences, to become aware of defects in the tenant's unit and to notify the landlord of any defects when they are discovered."

We agree with tenant. We hold that section 358 of the *Restatement (Second) of Torts* (1965) no longer accurately states the common law of Oregon.

As an initial matter, accepting tenant's argument necessarily requires that we reconsider a prior common-law rule. Although the court has changed common-law rules from time-to-time, *see Hammond v. Central Lane Communications Center*, 312 Or 17, 26 n 7, 816 P2d 593 (1991) (collecting cases), it "will not lightly overturn precedent, especially when the precedent has been followed for a long time," *id.* at 26. This court will reconsider a court-created rule or doctrine if "surrounding statutory law or regulations have altered some essential legal element assumed in the earlier case." *G.L. v. Kaiser Foundation Hospitals, Inc.*, 306 Or 54, 59, 757 P2d 1347 (1988) (setting out other circumstances as well). *See also Heino v. Harper*, 306 Or 347, 373-74, 759 P2d 253 (1988) (following analysis in abolishing doctrine of interspousal immunity); *Dahl v. BMW*, 304 Or 558, 567-68, 748 P2d 77 (1987) (enactment of comparative fault statutes supported reexamination of prior decision rejecting failure to wear safety belt as defense). As we explain below, such a circumstance is present in this case.

This court has paraphrased section 358 as follows:

"[A] landlord is liable if he fails to disclose to his lessee any condition which involves an unreasonable risk of harm if (a) *the lessee has no reason to know of the condition or risk* and (b) the lessor has reason to know of the condition and should realize the risk involved *and has reason to expect that the lessee will not discover the condition or realize the risk.*" *Richards v. Dahl*, 289 Or 747, 749, 618 P2d 418 (1980) (emphasis added).

---

greater than the combined fault of all persons specified in subsection (2) of this section, but any damages allowed shall be diminished in the proportion to the percentage of fault attributable to the claimant. This section is not intended to create or abolish any defense."

ORS 18.475(2) provides:

"The doctrine of implied assumption of the risk is abolished."

The court first generally acknowledged section 358 and its counterparts in 1968, shortly after the American Law Institute adopted the *Restatement (Second) of Torts*. *See Macomber v. Cox*, 249 Or 61, 69-70, 435 P2d 462 (1968) ("The rules applicable to the lessor-lessee relationship are stated in the *Restatement (Second) of Torts*, §§ 356-62 (1965)."); *id.* at 70 n 9 (citing and quoting section 358).

As *Macomber* indicates, section 358 does not exist in isolation. Instead, it states one of several "exceptions" to what the *Bellikka* court described as the "rule of immunity" set out in section 356 of the *Restatement*. 306 Or at 643. Section 356 provides:

> "Except as stated in §§ 357-362, a lessor of land is not liable to his lessee or to others on the land for physical harm caused by any dangerous condition, whether natural or artificial, which existed when the lessee took possession."

That rule, which also is known as *"caveat lessee,"* is grounded on the following rationale:

> "When land is leased to a tenant, the law of property regards the lease as equivalent to a sale of the land for the term of the lease. The lessee acquires an estate in the land, and becomes for the time being the owner and occupier, subject to all of the liabilities of one in possession, both to those who enter the land and those outside of it." *Restatement (Second) of Torts*, § 356, comment a (1965).

This court has not adopted the rule stated in section 356 as the law in Oregon. In *Jensen v. Meyers*, 250 Or 360, 363, 441 P2d 604 (1968), this court rejected section 356, stating: "The property concept standing alone is not a satisfactory explanation for immunizing the lessor from liability." In articulating a different standard, the *Jensen* court noted that the exceptions to section 356, sections 357-362, recognized that tenants likely will not remedy hazards created by a lessor and that "the lessor is made liable upon the well accepted principle that one is liable for reasonably foreseeable harms." 250 Or at 363. The court concluded:

> "But this is not to say that the lessor should be liable in every case where a dangerous condition exists at the time of leasing the premises. As one court has expressed it, '* * * the nature of the defect might be such that the landlord

would reasonably expect that the tenant would take steps to remedy the defect or otherwise to safeguard persons entering them at his invitation.' " *Id.* at 363-64 (ellipsis in original).

In *Bellikka,* this court reaffirmed the standard set out in *Jensen* as "a sound premise for determining liability to 'others on the property' of leased premises." 306 Or at 647. However, the court expressly limited that decision "to a discussion of the proper basis of potential liability for landowners with respect to visitors who are on the property at the invitation of the tenant." *Id.* at 640.

Unlike section 356, this court has approved section 358 as a statement of Oregon common law. *See Lapp v. Rogers,* 265 Or 586, 588, 510 P2d 551 (1973) (stating the rule); *Richards,* 289 Or at 749 (applying the rule and stating that "[w]e have previously stated that the principles announced in the *Restatement of Torts (Second)* reflect our views of the law governing the liability of a landlord to a tenant").[4] The concurring opinion in *Richards* noted that the court's decision in *Lapp* predated the legislature's abolition of the doctrine of implied assumption of risk in 1975, that section 358 arguably "carries with it some of the trappings of implied assumption of risk[,]" and that, if it does, "this court could no longer analyze the liability of landlord to tenant under that section." *Richards,* 289 Or at 755 (Lent, J., concurring). This case presents the issue posed by the concurrence in *Richards.*

As landlord's proffered instructions indicate, section 358 provides that, if tenant either knew or should have known that the railing presented a safety hazard, he would

[4] The court repeatedly has stated that "[t]he exact formulations of the Restatements are not necessarily authoritative statements of the law of this state[.]" *Anderson v. Fisher Broadcasting Co.,* 300 Or 452, 460, 712 P2d 803 (1986); *see also U.S. National Bank v. Fought,* 291 Or 201, 227, 630 P2d 337 (1981) (Linde, J., concurring) ("it is misleading to speak of pleading or proving a cause of action 'under' [a *Restatement* section], at least until this court has firmly said that the cited section corresponds to the law in Oregon"). Even when the court decides that a particular *Restatement* principle corresponds to Oregon law, the court does not "enact the exact phrasing of the Restatement rule, complete with comments, illustrations, and caveats." *Brewer v. Erwin,* 287 Or 435, 455 n 12, 600 P2d 398 (1979). Accordingly, this court's reliance on section 358 in *Lapp* and *Richards* must be viewed in that light.

be barred from any recovery. *See Lapp*, 265 Or at 588 ("If the common law rules defining the lessor's duty are applicable, then the demurrer was properly sustained because the complaint alleges as the cause of injury a condition which would be known to plaintiff."). At a minimum, such a regime would revitalize the concept of contributory negligence, because a tenant is precluded from *any* recovery if the tenant knew or should have known either of the condition or the risk involved, even if the tenant's fault or negligence is less than the landlord's. ORS 18.470 precludes such a result. In other words, ORS 18.470 alters an "essential legal element assumed in the earlier case," *Kaiser Foundation Hospitals*, 306 Or at 59, *i.e.*, the propriety of a liability scheme that includes contributory negligence as an element.

Two decisions of this court support our conclusion. *Nylander v. State of Oregon*, 292 Or 254, 637 P2d 1286 (1981), involved a wrongful death action in which a personal representative alleged that the state negligently had failed to post warnings about the icy condition of a bridge. The trial court had instructed the jury that, if it found that the decedent either knew or reasonably should have known of the nature and extent of the danger, then the state had no duty to warn. *Id.* at 257. This court held the instruction erroneous, reasoning, in part, as follows:

> "Although the instruction * * * asked the jury to consider what [the decedent] actually knew when she drove onto the bridge, it could well be understood to state a defense of implied assumption of the risk that was abolished by ORS 18.475. * * * Insofar as the instruction asked the jury to decide what she 'reasonably' should have known when she did so, it could be understood to state a defense of contributory negligence. But any contributory negligence on her part would be relevant only as 'comparative fault' under ORS 18.470, whether or not it is the kind of negligence that before ORS 18.475 was described as implied assumption of the risk." *Nylander*, 292 Or at 260 (citation omitted).

In *Woolston v. Wells*, 297 Or 548, 687 P2d 144 (1984), the plaintiff sought damages for injuries he sustained when he fell while ascending stairs to deliver a television to the landlord's tenant. The trial court instructed the jury on the

basis of the *Restatement (Second) of Torts*, §§ 343(b) and 343(A)(1) (1965). *Woolston*, 297 Or at 551-52. Those sections provide respectively:

> "A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he:
>
> "\* \* \* \* \*
>
> "(b)   should expect that they will not discover or realize the danger, or will fail to protect themselves against it \* \* \*."

> "A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness."

This court held both instructions invalid. The instruction based on section 343(b) "frustrate[d] the purpose of instituting a system of comparative fault," 297 Or at 556, while the instruction based on section 343(A)(1) "introduce[d] the concept of assumption of risk into the liability calculus," *id.* at 555. Tenant argues that section 358 "should suffer the same fate" as the *Restatement* sections at issue in *Woolston*. We agree.

One final point bears mentioning. We do not mean by our decision to state or imply that evidence of a tenant's actual or constructive knowledge is irrelevant to a landlord-tenant negligence action. Rather, as the court stated in *Woolston*: "In determining and comparing fault, the jury must necessarily consider the obviousness of danger and the ease or difficulty with which harm to the plaintiff from that danger could be avoided by either party." 297 Or at 558; *see also id.* at 559-61 (Peterson, C. J., concurring) (emphasizing point). We hold only that a tenant's actual or constructive knowledge of a dangerous condition does not determine, as a matter of law, the nature or extent of a landlord's obligations to the tenant.

For those reasons, landlord was not entitled to have the jury instructed based on the instructions it proffered to the trial court, and the Court of Appeals' conclusion to the

contrary constituted error. *See Hernandez v. Barbo Machinery Co.*, 327 Or 99, 106, 957 P2d 147 (1998) (refusal to give requested jury instruction is not error "if the requested instruction is not correct in all respects"). Because landlord did not except separately to the trial court's general foreseeability instruction as improper, we do not assess the propriety of that instruction in this case. Finally, because we conclude that the Court of Appeals erred in its interpretation of the RLTA, it should have considered tenant's cross-appeal concerning attorney fees. We express no view as to the merits of that issue.

The decision of the Court of Appeals is reversed, and the case is remanded to that court to consider petitioner's cross-appeal.